IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| ANTWUNE JENKINS | § | |
| VS. | § | CIVIL ACTION NO. 9:20-CV-238 |
| GEORGIANA NCHOTEBAH, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Antwune Jenkins, an inmate previously confined at the Gib Lewis Unit of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Georgiana Nchotebah and Christopher Rogers.

The action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Defendant Nchotebah filed a motion for summary judgment. This Report and Recommendation considers the merits of the motion.

Factual Background

Plaintiff claims he has difficulty walking due to a medical condition. Plaintiff alleges he saw Defendant Nchotebah, a nurse practitioner employed at the Gib Lewis Unit, multiple times for various health-related issues, and she is aware he has physical limitations. Plaintiff was temporarily transferred from the Gib Lewis Unit to the Estelle Unit for physical therapy. Plaintiff refused to participate in physical therapy, and he was returned to the Gib Lewis Unit on March 6, 2019.

When he arrived at the Gib Lewis Unit on March 6, 2019, Plaintiff asserts he was in pain from the long bus ride. Plaintiff alleges prison officials tried to make him walk 500 yards carrying his personal property. Plaintiff states that he mistakenly believed he had a 50-yard walking medical restriction, but the walking restriction had been removed by a physician at the Estelle Unit. Plaintiff sat on the ground and refused to walk. A member of the security staff charged Plaintiff with a disciplinary infraction for refusing to obey an order, and then Plaintiff was brought in a wheelchair to the medical department for a prehearing detention physical.

Defendant Nchotebah, a nurse practictioner, was working in the medical department. Plaintiff alleges Defendant Nchotebah told the security staff that she had reviewed Plaintiff's medical records for 20 minutes, that there was nothing wrong with Plaintiff, and that he could walk. The security staff tried to make Plaintiff walk to his cell, but Plaintiff sat down again because he had numbness and pain in his legs and back. Plaintiff was then brought to the administration building. Plaintiff alleges Defendant Rogers and another officer "mandandle[d]" Plaintiff to pick him up and "practically dragg[ed]" him. Plaintiff alleges he almost fell and reached to grab a post to keep from falling. When Plaintiff moved his arm to prevent a fall, Defendant Rogers said that Plaintiff was swinging his arm at him. Plaintiff claims he was thrown down to the ground face first, handcuffed and shackled, and then Defendant Rogers hit and choked him.

Defendant Nchotebah's Motion for Summary Judgment

Defendant Nchotebah asserts that she was not deliberately indifferent to Plaintiff's serious medical needs because she did not know of, and disregard an excessive risk to Plaintiff's health or safety. Defendant Nchotebah also contends that she is entitled to qualified immunity. In support of the motion, Defendant Nchotebah submitted the affidavit of Dr. Thomas Donohue (Exhibit A),

relevant portions of Plaintiff's medical records (Exhibit B), and the use of force records from the incident (Exhibit C).

Plaintiff's medical records show that he was given a pre-restrictive housing health evaluation by Peggy Durant at 1:15 p.m. on March 6, 2019. (Doc. #39-2 at 57-60, Doc. #39-3 at 24-25.) Ms. Durant noted that Plaintiff had a "minor injury of back of scalp abrasion." (Doc. #39-2 at 57.) Ms. Durant stated that Plaintiff had chronic back pain, and that he was refusing to walk although there was current documentation and recent observation of him ambulating. (Doc. #39-2 at 58.) Ms. Durant found that there were no contraindications for placement in restrictive housing, and then Plaintiff was released to security. (Doc. #39-2 at 59.)

The medical records reflect that Defendant Nchotebah evaluated Plaintiff at 4:33 p.m. on March 6, 2019. (Doc. #39-2 at 28.) Plaintiff was brought to the medical department in a wheelchair. Plaintiff stated that he could not walk, and he refused to stand so Defendant Nchotebah could evaluate his gait. *Id.* Plaintiff complained of chronic back pain. *Id.* Defendant Nchotebah noted that Plaintiff had been observed getting off the bus without any apparent problems by security officers and inmates who were on the bus with him, and then he refused to walk. *Id.* Defendant Nchotebah noted that Plaintiff did not currently have a wheelchair pass, and she advised Plaintiff that he could submit a sick call request to be evaluated for a wheelchair pass. (Doc. #39-2 at 29.) The medical records also reflect that prior X-rays showed that Plaintiff had mild degenerative changes in his spine and lumbar spondylosis, and that Plaintiff had an MRI scheduled for April 2019. *Id.*

Plaintiff had an MRI of his lumbar spine on April 17, 2019. (Doc. #39-2 at 10-12.) The MRI report shows Plaintiff had degenerative changes at L5-S1, but "no high-grade spinal canal stenosis or severe neural foraminal narrowing is present at any level." (Doc. #39-2 at 11.)

In his affidavit, Dr. Donahue states that he reviewed Plaintiff's medical records and found that:

> [Plaintiff] has a history of refusing to walk on his own, claiming severe back pain makes it impossible for him to ambulate. Clinical findings, X-rays, nor CT scan supports his claim of being unable to walk on March 6, 2019. Nchotebah reviewed [Plaintiff's] chart and noted that a physician had determined on January 31, 2019, that a wheelchair was not medically indicated and that his diagnosis was spondylosis or osteoarthritis.

(Doc. #39-1 at 5.)

## Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). A fact is material if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 427 (5th Cir. 2003). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Instone Travel Tech*, 334 F.3d at 427.

The party seeking summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586-87 (1986); *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 994 F.3d 704, 708 (5th Cir. 2021); *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003).

Because summary judgment is a final adjudication on the merits, courts must employ the device cautiously. *Hulsey v. Texas*, 929 F.2d 168, 170 (5th Cir. 1991). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Naranjo v. Thompson*, 809 F.3d 793, 806 (5th Cir. 2015) (*quoting Murrell v. Bennett,* 615 F.2d 306, 311 (5th Cir. 1980)).

## Analysis

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, causes a person to be deprived of a federally-protected constitutional right. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Phillips v. Monroe Cnty.*, 311 F.3d 369, 373 (5th Cir. 2002). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured . . . .

42 U.S.C. § 1983. In order to state a cause of action under § 1983, a plaintiff must allege two elements. "First, the Plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

Plaintiff contends Defendant Nchotebah violated his Eighth Amendment right to be free from cruel and unusual punishment by being deliberately indifferent to his serious medical needs when she told Defendant Rogers that Plaintiff was able to walk. Defendant Nchotebah denies that she was

5

deliberately indifferent to Plaintiff's serious medical needs, and she asserts that she is entitled to qualified immunity.

*Qualified Immunity*

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is intended to protect all officials, except those who are plainly incompetent or who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Federal courts use a two-part test to determine whether the defendants are entitled to qualified immunity. *Freeman v. Texas Dep't of Crim. Just.*, 369 F.3d 854, 863 (5th Cir. 2004). The first prong of the test requires the court to determine whether the plaintiff's allegations, if true, establish a constitutional violation. *Hope*, 536 U.S. at 736; *Freeman*, 369 F.3d at 863. If a constitutional right was violated, the court must decide whether the right was clearly established at the time of the violation. *Freeman*, 369 F.3d at 863. Clearly established rights should not be defined broadly. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Hope*, 536 U.S. at 739 (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The district court has discretion to decide which prong of the two-part test to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In this instance, the court will first determine whether Plaintiff has alleged facts establishing a violation of the Eighth Amendment.

*Deliberate Indifference to Medical Needs*

Although the Eighth Amendment does not explicitly mandate a certain level of medical care for prisoners, the cruel and unusual punishment clause has been interpreted to impose a duty on prison officials to provide inmates with adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999). A prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 754 (5th Cir. 2001).

An Eighth Amendment claim consists of two components--one objective and one subjective. *Farmer*, 511 U.S. at 839. To satisfy the objective requirement, Plaintiff must prove that he was exposed to a substantial risk of serious harm. *Id.* at 834; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002). Plaintiff must also demonstrate that the defendants were deliberately indifferent to that risk. *See Farmer*, 511 U.S. at 834; *Lawson*, 286 F.3d at 262. The deliberate indifference standard is a subjective inquiry; Plaintiff must establish that the defendants were aware of an excessive risk to Plaintiff's health or safety, and yet consciously disregarded the risk. *Farmer*, 511 U.S. at 840-41; *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Stewart*, 174 F.3d at 534.

Mere negligence, neglect, or medical malpractice does not rise to the level of a constitutional violation. *Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical

personnel does not suffice to state a claim for deliberate indifference."); *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) ("[A]llegations of malpractice or negligence will never state a claim under the Eighth Amendment."); *Stewart*, 174 F.3d at 534. Nor does an inmate's disagreement with his medical treatment amount to an Eighth Amendment violation. *Stewart*, 174 F.3d at 537; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). "Rather, the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Defendant Nchotebah asserts that she did not have any interaction with Plaintiff until after the use of force had taken place. For purposes of this Report and Recommendation, the court must accept Plaintiff's version of the events, in which he states that Defendant Nchotebah told Defendant Rogers that Plaintiff was able to walk before the use of force took place. Nevertheless, the competent summary judgment evidence does not support a conclusion that Defendant Nchotebah deliberately disregarded a substantial risk to Plaintiff's health. The medical records reflect that she reviewed Plaintiff's medical records, found that his wheelchair pass had been recently discontinued by a physician, and noted that he had been observed ambulating unassisted when he arrived at the Gib Lewis Unit. At most, the facts might be sufficient to state a claim of medical malpractice, but negligent conduct does not rise to the level of a constitutional violation. *Williams v. Hampton*, 797 F.3d 276, 280-81 (5th Cir. 2015) (noting that deliberate indifference requires a state of mind "more blameworthy" than negligence).

Defendant Nchotebahs' conduct does not rise to the level of egregious intentional conduct required to satisfy the deliberate indifference standard. *See Gobert v. Caldwell*, 463 F.3d 339, 351

(5th Cir. 2006). Because Plaintiff has not shown that Defendant Nchotebah violated his clearly-established rights under the Eighth Amendment, she is entitled to qualified immunity. As a result, Defendant Nchotebah's motion for summary judgment should be granted.

## Recommendation

Defendant Nchotebah's motion for summary judgment should be granted.

## Objections

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggrieved party from the entitlement of *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

SIGNED this 23rd day of August, 2022.

_____
Zack Hawthorn
United States Magistrate Judge